UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH WALLACE,<br><br>          Plaintiff,<br><br>    v.<br><br>STABLE ROAD ACQUISITION CORP., BRIAN KABOT, JAMES NORRIS, MARC ELLIOT LEHMANN, ANN KONO, KELLEN O'KEEFE, and JAMES HOFMOCKEL,<br><br>          Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Joseph Wallace ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Stable Road Acquisition Corp. ("SRAC" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with SRAC, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of SRAC, Momentus Inc. ("Momentus"), Project Marvel First Merger Sub, Inc. ("First Merger Sub"), a wholly-owned subsidiary of SRAC, and Project Marvel Second Merger Sub, LLC ("Second Merger Sub"), a wholly-owned subsidiary of SRAC ("Proposed Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of

1

candor/disclosure under state law.

2. On October 7, 2020, SRAC entered into an agreement and plan of merger with Momentus, First Merger Sub, and Second Merger Sub ("Merger Agreement"), whereby First Merger Sub will merge with and into Momentus, with Momentus surviving as a wholly-owned subsidiary of SRAC, immediately followed by Momentus merging with and into Second Merger Sub, with Second Merger Sub surviving as a wholly owned subsidiary of SRAC ("Combined Company").

3. Upon consummation of the Proposed Transaction, SRAC shareholders will own only 11% of the Combined Company ("Merger Consideration").

4. On November 2, 2020, in order to convince SRAC public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Momentus; and (ii) information provided in the *Background to the Business Combination*.

6. The Proposed Transaction is expected to close early in 2021, so the special meeting of SRAC's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote, so the Company's shareholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to SRAC's public common

shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, SRAC's common stock trades on the NasdaqGS, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's transfer agent, Continental Stock Transfer & Trust Company is located in this District at 1 State Street Plaza, New York, NY 10004. Last, the Company's auditor, Withum Smith & Brown, PC is located in this District at 1411 Broadway, New

York, NY 10018.

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SRAC common stock.

12. Defendant SRAC is a public company incorporated under the laws of Delaware with principal executive offices located at 1345 Abbot Kinney Blvd., Venice, CA 90291. SRAC's common stock is traded on the NasdaqGS under the ticker symbol "SRAC."

13. Defendant Brian Kabot is, and has been at all relevant times, a director of the Company, Chairman of the Board, and Chief Executive Officer.

14. Defendant James Norris is, and has been at all relevant times, a director of the Company.

15. Defendant Marc Elliot Lehmann is, and has been at all relevant times, a director of the Company.

16. Defendant Ann Kono is, and has been at all relevant times, a director of the Company.

17. Defendant Kellen O'Keefe is, and has been at all relevant times, a director of the Company.

18. Defendant James Hofmockel is, and has been at all relevant times, a director of the Company.

19. The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with SRAC, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20. SRAC is a special purpose acquisition company (SPAC) formed by SRC-NI Holdings, LLC, an affiliate of Stable Road Capital, for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination.

21. Momentus, as a first mover in building in-space transportation and infrastructure technology, is at the forefront of the commercialization of space. With an experienced team of aerospace, propulsion, and robotics engineers, Momentus has developed a cost-effective and energy efficient in-space transport system based on water plasma propulsion technology. Momentus has in-place service agreements with private satellite companies, government agencies, and research organizations, and its first Vigoride™ transport and service vehicle launch is scheduled for December 2020.

22. According to the October 7, 2020, joint press release announcing the Proposed Transaction:

> **MOMENTUS TO BECOME PUBLIC THROUGH MERGER WITH STABLE ROAD ACQUISITION CORP.**
>
> SANTA CLARA, Calif.--(BUSINESS WIRE) -- **Momentus Inc.** ("Momentus" or the "Company"), a commercial space company offering in-space transportation and infrastructure services, today announced it has signed a definitive merger agreement with Stable Road Acquisition Corp. (Nasdaq: SRAC, SRACU, SRACW) ("Stable Road") that will result in the Company becoming publicly listed. Upon the closing of the transaction, the combined operating company will be named Momentus Inc. and its securities will be listed on Nasdaq and trade under the ticker symbol "MNTS."
>
> Momentus graduated from the prestigious Y Combinator program and has raised venture and private funding from notable investors such as Prime Movers Lab, Y Combinator, Tribe Capital, University of Wyoming Foundation, Lerner Enterprise, Tony Robbins, Joe Montana's liquid2VC fund and others.
>
> The current size of the global space economy is expected to grow from an estimated $415 billion to $1.4 trillion by 2030 driving demand for transportation and infrastructure services in space. With the significant market opportunity in the new space economy, Momentus is well-positioned to address the need for in-space transportation and infrastructure services. Utilizing a multi-pronged approach, Momentus is developing capabilities to provide critical infrastructure services: in-space transportation, satellite as a service, and in-orbit services. The Company has strong momentum from the rapidly expanding small satellite market, which is seeking low-cost and regular launch access to orbit. Momentus' customers include satellite operators, satellite manufacturers, launch providers, defense primes such as Lockheed Martin and government agencies such as NASA. As of September

30, 2020, the Company had customer contracts which represent approximately $90 million in potential revenue over the next several years.

Momentus is creating the first hub and spoke model in space by offering last-mile delivery in partnership with key launch operators, including SpaceX. Momentus offers its customers significantly more affordable access to space by combining the capabilities of low-cost launch vehicles and Momentus' transport and service vehicles, powered by water plasma propulsion technology. Momentus plans to expand its offerings by providing a satellite as a service model for hosted payloads and an in-orbit service model for satellite deorbiting, life extension, refueling, and repositioning. In 2019, the Company successfully tested its water plasma propulsion technology in space.

Momentus has developed its first transport and service vehicle, Vigoride, to serve the needs of customers in Low Earth Orbit by delivering small satellites up to 750kg to precise destinations, and expects to provide hosted payload services, and in-orbit services. The Company plans to launch its first Vigoride vehicle in December 2020 with commercial customers and four to five Vigorides in 2021. The Company is developing two larger, more capable vehicles in its development plans: Ardoride in 2022 and Fervoride in 2024 with the goal of serving all orbits up to Geosynchronous Orbit and even Lunar Orbit and handling payloads of up to 4,000 kg. To extend the capabilities of gigantic rockets like SpaceX's Starship and Blue Origin's New Glenn, the Company is building its largest vehicle to date – Fervoride, which the Company expects to be capable of delivering up to 20 tons of cargo anywhere from Low Earth Orbit to Geosynchronous Orbit and into deep space. Fervoride is expected to be a pathfinder for the prospecting and use of space resources such as water from the Moon and asteroids and a technology enabler for the largest moonshot opportunities like solar energy generation in space.

"Momentus is at the forefront of the new space economy and is poised to capitalize on the significant growth opportunity as a first mover; we believe in a future where humanity is equipped with all it needs to flourish throughout the solar system," said Mikhail Kokorich, Founder & Chief Executive Officer of Momentus. "Our mission is to provide the infrastructure services that support all industry beyond Earth. The technologies we've developed or built upon, including our groundbreaking water plasma propulsion, will support growing demand from the booming satellite industry with affordable, versatile and low risk transportation and infrastructure services across private companies, government agencies, and research organizations. We expect to deploy the proceeds of this transaction to support our rapid growth and operations, and to support our capital needs as we ramp up revenues. We are excited to partner with the Stable Road team and look forward to leveraging their capital markets expertise."

Brian Kabot, Chairman & Chief Executive Officer of Stable Road added, "We set out to identify a disruptive company and Momentus was the most unique and compelling opportunity to create value through our investment, as we believe the Company is primed to be a leader in the rapidly growing new space economy. As the only public, pure-play commercial space company capable of revolutionizing space infrastructure, Momentus is poised to capitalize on its market-defining position. We are excited to partner with Momentus as the Company develops its technology portfolio, continues to leverage deep customer relationships across diverse private and public sector applications, and expands its experienced leadership team."

(Emphasis in original).

23.     The Merger Consideration represents inadequate compensation for SRAC shares. Proxy, 24.

24.     Therefore, it is imperative that SRAC shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for the

Company's shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**The Proxy Omits Material Information**

25. On November 2, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Shareholder Vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction, and thus the Proxy should be amended.

26. First, the Proxy fails to disclose the Net Income projections for Momentus, despite Defendants referencing Net Income throughout the Proxy. Proxy, 38, 79-80, 217. Defendants elected to summarize financial projections for Momentus, but excised and failed to disclose the readily available Net Income projections. By disclosing certain projections in the Proxy and withholding the Net Income projections, Defendants render the projections on page 130 of the Proxy materially incomplete and provide a misleading valuation picture of Momentus. Simply put, Net Income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

27. Unlike poker where a player must conceal his/her unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed, while others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by

the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have omitted the crucial Net Income projections for Momentus, which renders the Proxy misleading.

28. Second, the Proxy omits certain information regarding the *Background to the Business Combination.*

29. To start, the Proxy states that SRAC entered into non-disclosure agreements ("NDAs") with 26 potential business combination targets. Proxy, 111. However, the Proxy fails to disclose whether the NDAs contained standstill provisions, and if so, whether those provisions contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon execution of the Merger Agreement or still remain in effect. Failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed an NDA could have made a superior proposal. **But that is not true.** If those NDAs contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the Proxy materially misleading.

30. Next, the Proxy discloses that the Company negotiated fees and executed a Placement Agent Agreement with Evercore Group, L.L.C. ("Evercore") and Cantor Fitzgerald & Co. ("Cantor"), whereby they would serve as co-placement agents for the proposed PIPE investment. *Id.* at 114. However, the Proxy omits the amount of fees to be paid to Evercore and Cantor, respectively. Defendants must disclose this information because Evercore served as Momentus' financial advisor throughout the process leading up to execution of the Merger Agreement, so SRAC shareholders are entitled to determine for themselves whether there is a potential conflict of interest. *Id.*

8

31. Last, the Proxy states that on "September 30, 2020, the parties discussed and agreed to lower the valuation of Momentus from $1.8 billion to $1.2 billion," yet it omits the reasons why the parties agreed to such a significant drop in valuation. *Id.* at 116. This information must be disclosed because it is critical for SRAC shareholders to understand the true valuation of Momentus, in order to determine whether to vote their shares in favor of the Proposed Transaction.

32. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

37. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Momentus; and (ii) certain information provided in the *Background to the Business Combination*.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

39. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board reviewed the financial data provided to them by Momentus. Further, the Individual Defendants were privy to and had knowledge of the

projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

41. SRAC is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of SRAC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SRAC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed

and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### (Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

53. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

54. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be

deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

//


//

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 3, 2020                               **MONTEVERDE & ASSOCIATES PC**

By:  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*